FILED

2:54 pm, 12/8/14

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

In re                                    )
                                         )
        ROBERT M. LANE                    )      Case No.   11-20398
                                         )          Chapter 7
                                         )
            Debtor.                       )

## OPINION ON DEBTOR'S MOTION TO COMPEL TRUSTEE TO COMPLY WITH TERMS OF SETTLEMENT

This matter ("Motion") initially came before the court for an evidentiary hearing on January 15, 2014. Gary A. Barney ("Trustee") filed an objection. The parties stipulated that the testimony and exhibits presented to court at a prior hearing would be incorporated into the record for the purpose of this matter. The court continued the hearing to allow the Trustee the opportunity to determine if discovery was necessary to respond to Debtor's witness's surprise exhibit. Thereafter, the matter was continued, several times, returning before the court on November 4, 2014.

Debtor requests that the court order the Trustee to perform certain terms under the Debtor Settlement Agreement, entered into between the parties and approved by the court on June 20, 2013.[1] Debtor alleges that Trustee failed to: (1) turn-over Debtor's retirement assets valued at $2.5 million; (2) release the liens by filing UCC-1 forms on Debtor's automobiles and other assets; (3) turn over numismatic coins; and (4) requests attorney fees and costs for bringing this motion. Additionally, during the course of the

---

[1] Docket No. 332.

hearing, Debtor asserted: (1) Trustee breached his duties as a trustee; (2) canceled

Debtor's health insurance in violation of the automatic stay; (3) proposed to sell Debtor's

home in Santa Barbara, California at a reduced price; and, (4) had not diligently pursued

the sale of the Chatham shares or the St. Catherine's real estate.

The Trustee asserted that: (1) Debtor's Motion is a continuing "objection to the

Trustee's proposed sale of estate assets;" (2) the retirement assets were never in the

Trustee's possession; (3) the Debtor Settlement Agreement does not require the Trustee

to "delete security interests" beyond the Court's approval order to release liens on the

assets to be retained by the debtor, but to accommodate the Debtor, Trustee prepared and

recorded lien releases; and, (4) Debtor's request for legal fees and expenses is unfounded

as the Trustee is not in violation of the Debtor Settlement Agreement and as Debtor

represents himself, he is not entitled to legal fees.

**Findings of Facts**

This has been an extremely litigious chapter 7 bankruptcy case. Debtor filed his

petition and schedules on April 19, 2011. At that time, Debtor was represented by

counsel.[2] Debtor received his chapter 7 discharge on August 4, 2011. Thereafter, the

Trustee filed adversary proceedings to recover assets against Debtor and related entities.[3]

---

[2] Over the course of this case, Debtor was initially represented by counsel, who withdrew on January 2, 2013. Debtor proceeded pro se in the base case until he retained attorneys in June 2014. Debtor's attorneys then withdrew in September 2014. At the time of the November, 2014 hearing, Debtor was again proceeding, pro se.

[3] The related entities included: The Riverbend Ranch Trust, Matthew W. Lane, Trustee of the Riverbend Ranch Trust I; Boulder Investment Trust, Colleen Lane, Trustee of the Boulder Investment Trust; Windriver Corp of WY, LLC, and Oatrucua E. Lane, Managing Director of Windriver Corp of WY, LLC. [Adversary Case. No. 12-2013].

Trustee also filed an adversary to revoke Debtor's discharge. Numerous contested matters were also filed including, but not limited to (and relevant to this matter): Trustee's objection to Debtor's claimed exemptions; Trustee's motion for a protective order; and, Debtor's motion for sanctions. The Trustee entered into the Family Settlement Agreement resolving the adversary proceeding with the related entities for turn-over of estate assets. Debtor objected to the approval of Family Settlement Agreement. Hearings were convened on the Trustee's motion regarding Debtor's claimed exemptions and the matter before this court. Thereafter, Trustee and Debtor entered into the Debtor Settlement Agreement to resolve all  pending litigation.

The terms of the Debtor Settlement Agreement state, as relevant:

> "Notwithstanding the Family Settlement Agreement provision...Trustee has agreed with the debtor in the Debtor Settlement Agreement that the following assets shall not be turned over to the Trustee, but instead shall be excluded from the Disputed Property, shall be turned over to the debtor, and shall not be Property of the Bankruptcy estate (collectively, the "Debtor Retained Property."):
> (a) Assets in Debtor's IRA and Penobscot Pension Plan in an amount not to exceed $2.5 million; any assets therein exceeding collectively $2.5 million, however, shall be turned over to the Trustee;
> (b) The 'Collectibles' identified on Exhibit A to the Initial Settlement Agreement, which include...numismatic coins...
> (c) Debtor's 2013 Subaru, 2008 Toyota Prius, and 1989 Mercedes Benz 560L..."

Debtor's Schedule B lists the following two assets, with values and claiming each as exempt.

- "IRA (App 99%) from rollovers from retirement plans and growth of fund)" with a current value of $656,039.00;  and,
- "Pension (value estimated)

Penobscot Enterprises (Estimated Balance)" with a current value of $588,240.00.

As stated, Trustee objected to the claimed exemptions and the court held a hearing on October 2, 2012. At the hearing the parties reported that a "global settlement" had been reached to resolve pending adversary proceedings and contested matters. The court was asked to continue the hearing, indefinitely, to allow the parties to memorialize the agreement. The Debtor Settlement Agreement and Family Settlement Agreement were approved by the court on June 19, 2013. Subsequently, the parties executed a *Modification of Settlement Agreement and Mutual Release*[4] also referred to as the "Art Settlement Agreement," which states,

> "2.    <u>Pension Assets</u>.
> a.    The Debtor is owed gold and silver coins valued at $470,317.58 as part of the Pension Assets under Section 5.A. of the Settlement Agreement. Debtor also contends he is owned additional Pension assets, which the Trustee disputes. This Agreement does not waive any of Debtor's claims to additional Pension Assets, or the Trustee's defenses thereto.
> b.    Rather than funding that sum in kind or in liquidation of the gold and silver coins that are included in the Pension Assets, the Trustee will forthwith deliver, convey and assign to the Robert M. Lane IRA the artwork described on Exhibit A attached and incorporated into this Modification. Such conveyance and assignment will be by Trustee's Bill of Sale without warranty of title or otherwise, an on an "as-is, where-is" basis.
> c.    The value of the artwork described on Exhibit A is $470,700.00 which is $382.42 more than the Debtor is owed under Section 5.A. of the Settlement Argument. The Trustee hereby waives any obligation of the Debtor to reimburse the Debtor's Bankruptcy Estate for such excess."

---

[4] Lane Exhibit No. 17.

The Trustee's Bill of Sale was executed on October 23, 2013 conveying the artwork, as agreed, to the Robert M. Lane IRA.  Before the Trustee could release physical possession of the artwork to the Debtor, Trustee was served a writ of garnishment based upon an ongoing action between Debtor and his ex-spouse, Vickie Lane.  Ms. Lane executed on Debtor's property to satisfy her judgment from the California court.  Trustee was under a court restriction to not distribute any of Debtor's property that he held until the litigation regarding the execution was resolved in the Ninth Judicial District Court in Teton County, Wyoming, regarding the collection efforts of Ms. Lane.

**Discussion**

Debtor's IRA and Penobscot Pension Plan

Debtor argues that the Trustee failed contribute assets into Debtor's retirement fund to insure its balance at the amount of $2.5 million dollars under the terms of the Debtor Settlement Agreement.  Based on pleadings that the Trustee filed, Debtor asserts that the balance of the retirement accounts is a moving target.  The court agrees.  The balance of the retirement accounts was not clear to the court until now.  Its review of the pleadings, testimony and evidence reflect that the moving target is based largely upon the actions of the Debtor.

The retirement funds are assets of DFWU, LLC ("DFWU").  Debtor's sister, Patricia E. Lane ("Patricia") and mother, Patricia A. Lane ("Mother") each owned one

share of the limited liability company with Debtor owning the balance.[5] Patricia's

testimony, through her deposition, reveals that DFWU was formed at Debtor's request

after Debtor's divorce judgment was entered, but before he filed for bankruptcy

protection. Mother was named as president and Patricia was the manager, although

Patricia stated that she did not understand her role in DFWU. Patricia testified that

Debtor controlled and transferred funds into DFWU's bank account at Bank of Jackson

Hole, himself, or instructed her what to do regarding payments using the funds. A

subsequent bank account was opened with Wells Fargo Bank under Patricia's and

Mother's names with a deposit in the amount of $599,500.00. Additional deposits were

made in the amounts of $106,000.00; $557,784.95 (Oct. 5, 2012); $369,397.47 (Oct. 12,

2012); and $397,000.00 (Nov. 6, 2012). Patricia testified that all the transactions were

from DFWU funds, transferred by the Debtor and totaled "a little more than two million

dollars."[6]

Patricia testified that the she used the funds to purchase a vehicle for Debtor and

pay the taxes for the transaction, pay Patricia's credit card expenses incurred by Debtor,

and cash sent to the Debtor in increments of $1,000.00 to $3,000.00, based upon his

requests.

During the time period between September to Christmas, 2012, Debtor presented

---

[5] The court's use of first name and titles for Patricia E. Lane and Patrica A. Lane is for clarity sake, meaning no disrespect to either individual.

[6] The court's calculation of the transactions show a total amount of funds transferred of $2,029,682.42.

to Patricia, the "Loan Agreement Between DFWU, LLC and Patricia E. Lane Dated

June 23, 2010" for her signature. She was certain that she did not execute the document

in June 2010, although the document has that date in its heading. The terms of the loan

do not require Patricia to provide any security as collateral or make any payment on the

loan until its maturity date of June 23, 2040.

On November 16, 2012, Patricia issued a check to J.R. Harlan, LLC in the amount

of $1,800,000.00 upon the instructions of the Debtor and provided the check to him.

Patricia had formed the J.R. Harlan, LLC entity in Pennsylvania with the assistance of an

attorney, as instructed by Debtor. Debtor later presented the check to the bank in

November 2013. However, the bank refused to honor the check. Patricia she did not

know the reason for the long delay between the time that she issued the check and that

the Debtor attempted to deposit it. However, during that time, Patricia transferred the

funds from the account with her Mother, into a separate account under her name only.

The funds are currently in Patricia's possession. The court, in comparing dates,

documents and events, finds Patricia's testimony to be credible. Debtor's testimony

regarding J.R. Harlan, LLC was evasive and unbelievable.

Debtor presented testimony and evidence of Roger E. Wilde, of ANACAPA

Valuations, Inc. who testified regarding the value of Debtor's Pension Assets in the

Penobscot Pension Trust. Mr. Wilde discounted the value of the Pension Assets based

upon the unsecured, high-risk loan to Patricia of the 1.8 million dollars. Although this

testimony and evidence was accepted by the court, it does not find that discounting the

value of the Pension Assets to be equitable, based upon Debtor's actions of non-

disclosure and subterfuge. The court will not discount the Pension Assets based upon

this evidence.

The court's review of the history of the Pension Assets reflects that Debtor failed

to properly disclose the value of his Pension Assets upon filing his bankruptcy petition

and schedules, which had a value of $2,029,000.00 at the time the Debtor filed for

bankruptcy protection. Debtor, on his own or through directions to Patricia, transferred

the funds for his benefit and use. Thereafter, he produced the Loan Agreement

transferring the balance of the Pension Assets to Patricia's personal control. The court

finds that the value of the Pension Assets, for the purpose of the Debtor Settlement

Agreement, was $2,029,682.42, leaving a balance of $470,317.58 owed to Debtor.

The parties agreed that Debtor would be paid the balance owed to him for his

Pension Assets in gold and silver coins. Debtor chose to use the amount owed to him in

gold and silver coins to purchase artwork as set out in the terms of the modification to the

Debtor Settlement Agreement known as the Art Settlement Agreement. Trustee provided

Debtor the bill of sale for the transaction. The bankruptcy estate does not owe any

further amounts to Debtor regarding the 2.5 million dollars of Pension Assets. Debtor's

Pension Assets and purchased artwork total over the 2.5 million dollars that Debtor was

allowed to retain by the Debtor Settlement Agreement. As to the physical control of the

artwork, the Trustee may only follow the orders of the state court, regarding the pending

litigation regarding distribution to the Debtor.

Numismatic coins

Debtor asserted that he did not receive the numismatic coins under the Debtor

Settlement Agreement.  This court disagrees.  Debtor was owed $$470,317.58 in gold

and silver coins, which he chose to exchange for artwork.  Although Debtor did not

agree, the court found testimony of the Trustee's expert, Mark Heitz, regarding the

classifications of the coins also to be credible.  Coins sold by the bankruptcy estate were

not numismatic coins.  The numismatic coins were accounted for and provided to the

Debtor under the terms of the Debtor Settlement Agreement and subsequent

modification, i.e. Art Settlement Agreement.

Vehicles

During the course of the testimony, Debtor conceded that the Trustee had

provided lien release documents per his request.  This issue was resolved.

Cancellation of Debtor's insurance in violation of the automatic stay

The terms of the Debtor Settlement Agreement provided that the Trustee "retains

the sole and exclusive right and discretion, for any reason and at any time, to remove

Debtor as manager of Saint Catherine Hospital of Indiana, LLC and Saint Catherine

Healthcare, LLC..."  The testimony reflects that the Trustee exercised this option and

removed Debtor.  Based upon Debtor's statements, this resulted in the cancellation of

Debtor's health insurance.  Debtor requested that the court order the Trustee to take

action to reinstate Debtor's medical insurance. The court's review of Debtor Settlement

Agreement shows that the agreement does not order the bankruptcy estate to be

responsible for maintaining Debtor's health insurance.  The Trustee did not violate the

Debtor Settlement Agreement.

Sale of assets (Santa Barbara house, Chatham shares and Saint Catherine Hospital)

Debtor alleges that the Trustee did not diligently pursue assets of the estate

breaching his duties as a trustee.  Debtor asserts that the Chatham shares and Saint

Catherine Hospital assets are substantial and the Trustee should be ordered to pursue

those assets leaving Debtor the residence of the Santa Barbara house.  The court's review

of the Debtor Settlement Agreement reflects that the Trustee complied with the generous

terms allowing Debtor to live in the residence which is an asset of the bankruptcy estate

for over a year, while the bankruptcy estate paid for the expenses and maintenance of the

property.  The court's review of the record reflects that the Trustee continues to pursue

the bankruptcy estate's minority interest in Chatham and the sale of the Saint Catherine

Hospital, both of which are difficult assets to reduce to cash.  Trustee has not violated,

either the Debtor Settlement Agreement, nor his fiduciary duties.

In conclusion, based upon the above analysis,  it is apparent to the court that the

Debtor continues efforts to control the outcome of this bankruptcy case.  The court is

well aware of the transactions that have been undertaken to pursue these assets and

reduce each to cash.  The court does not find that the Trustee breached his duty in selling

and/or pursuing these assets.  Additionally, the court finds that the Debtor agreed to

waive standing in the Debtor Settlement Agreement regarding the sale of assets but

continues to interfere with the sale of the assets and attempts to assert control of the

bankruptcy estate process.

Attorney fees and costs

The court finding that the Trustee has not breached the Debtor Settlement

Agreement denies any requests for legal fees or costs to the Debtor.

This opinion constitutes the Court's findings of fact and conclusions of law.  A

separate order shall be entered pursuant to Fed. R.  Bankr. P. 9021.

DATED this ___ day of December, 2014.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
        Robert Lane
        John Smiley